Good morning, your honors. May it please the court and cashier on behalf of defendant appellant Aimee Sabolyk. This is not your typical trade secret misappropriation case. In your typical case, allegations of wrongdoing that amount to unfair competition are alleged against the defendants and only the defendants. What we have here, which is unique, is allegations that cross both So the issue before the court, it's a pure issue of law, but the issue we would like this court to resolve is does a trade secret owner have an enforceable property interest in a trade secret that is itself procured through fraud? And on that basis, we would like this court to reverse the district court's denial of our motion for non-suit on the grounds that since fraud vitiates ownership, Strikepoint is without an enforceable property interest to collect on this misappropriation case. What we have below is undisputed evidence that optioneer, which was initially a plaintiff in this case and is a business affiliate of the misappropriation case, engaged in deceptive practices in itself acquiring its clients. And this is not just something that we alleged. This is something that the regulatory body in charge of this business, which is in the trading business, trading options, that they themselves found. They first brought an action against optioneer, accusing optioneer of engaging in these practices. I guess my biggest problem was, and I guess this is why I'm having a tough time getting to where you are, I'm wondering whether you can even bring this motion. I mean, it seems a little bit that I can't even review this motion because you didn't bring it appropriately. We're talking for a motion for insufficiency of evidence, and yet I know what you've got to do on those kind of, in order to get that in front of me, we have a motion for a non-suit. First thing I've got to do is somehow construe that as the motion under 50A, and then I'm having a tough time understanding whether ever you make any kind of a motion other than an untimely motion for a new trial. So I'm wondering how I get to where you want me to go with your argument this morning. Sure. Well, first of all, Your Honor, what we clearly have here is a pure issue of law. The nomenclature in the Ninth Circuit, of course, has changed over the years. There were directed verdicts. There were motions notwithstanding verdict. And I think they really capture not only sufficiency of evidence, they also capture those cases where, simply as a matter of law, you have to find in favor of one party. Perhaps it could have been brought... But bottom line, if I'm doing a 50A motion, I know what I'm considering. I know what the claims are. I know what the evidence is. I know what it is you're really going after. I know what the government's got to think about if they're going to make a 50A motion, or not even the government in this point, your opposition. This motion for non-suit was, I'd like to move for a non-suit. Failure to make out a prima facie case of the elements. That's it. I mean, there was nothing else. How can I construe that as a 50A motion? Well, certainly at the time, it was seniorly denied. And so before counsel... Well, I know it was seniorly denied, and nobody said, well, can I put an offer on the record? Can I tell you, Judge, what I had on my mind? Can I please let you know what we're talking about here? We just went back to our desk. I mean, I've been in trial a lot, and that isn't the norm. Usually somebody says, well, Judge, I hear you. You're getting a little ahead of yourself. They never say it that way. But I want to tell you something, and nothing happened. And then, I don't even think you dispute that you had an untimely motion for new trial. So again, I'm back to the same point. Three points, Your Honor. First, with respect to the motion not including more information. As you said, the judge did get a little away from himself, and he already started moving forward discussing the motion as to another defendant, the corporate defendant. So at that point, it would have been futile to do anything further. Secondly, to the extent you are concerned that somehow the judge didn't understand what was going on, it was quite clear throughout the course of litigation up to that point, and at that point, meaning the end of plaintiff's case in chief, it was quite clear through opening statements, through the testimony and so forth, the arguments that were being put forward. Well, but that isn't the rule. I mean, otherwise, I'd have a rule that says you don't have to say anything. I mean, we can always argue, well, that's what the case was about all the way along. But I guess if you really, if that's your argument, I understand it. What are you going to do about the failure to do anything afterwards? Your Honor, with all due respect, it doesn't matter. And the reason why is because we are dealing with a pure issue of law. And when it comes to a pure issue of law, the court always has, you, the court, the appellate court, always has discretion to hear that clear issue of law. And by the way, I don't know if you want to confirm, you received last night, I did file, a file, a Rule 28J letter regarding supplemental authorities. Did you receive that? Okay. Counsel, Judge Gould, I have a question for you. I haven't seen your last night letter yet. Sure, Your Honor. My question is this. On a pure issue of law, do you have any case that specifically holds that if a company develops its customer list in part through fraudulent practices, that it does not have a trade secret in its customer list? Because, you know, there surely have been lots of cases involving fraudulent practices in the U.S. that the FTC or SEC go after. So, I mean, do you have a case where after such an event, someone has litigated and held, and a court has held, that the company that did the deception doesn't have a trade secret in its customer list? Your Honor, first I will answer your question, and I don't want to forget about you, Judge Smith. I will get back to you as well. That's okay. I think you're... Your concerns. Your Honor, we do not have, there is not a specific case that we are aware of that specifically holds that. But what you have to understand that I think is clear in this case is these are fundamental principles that underlie unfair competition laws. This is nothing novel. We're not asking you to go on a limb and do something you never really thought to do. I mean, the very unfair competition laws that Stragg Point is trying to invoke are the laws that say that you can't compete through improper means, you can't bribe, cheat, steal, you can't misrepresent, which is what happened in this case. That doesn't really answer my question, unless your answer is just like, no, you don't have a case. You'd be asking us to make new law on that. And this, I'm not saying it's a frivolous contention. It sort of takes me back to my law school days where I remember arguments in property class about how, you know, courts divided when a thief stole something and then someone stole from them the property. Did they have a claim? So I understand that issue, but I'm just trying to find out, you know, in the whole of the United States, is there any federal court that's ever made a ruling that a customer list developed partly on fraud is no longer worthy of trade secret protection? Not specifically, Your Honor. There are cases that were cited in the briefs that deal with analogous situations, such as a patent, when someone goes to apply for a patent, engages in some sort of wrongdoing, misrepresentation, or so forth in that process, basically committing a wrong in the patent office. And then they go to file a patent infringement case against someone else, for example, and then there it's held that you can't enforce that right. It's not a valid right. So these are some of the cases that were cited in the brief. And we would be happy to provide supplemental briefing to satisfy that concern of yours, you know, after argument, if that's something that you would like us to do. Thank you. But we do believe that the general principles here really dictate, compel this sort of ruling. And there certainly is no Ninth Circuit case to the contrary. So we certainly are sensitive to the fact that this Court is not in a position to contradict other Ninth Circuit decisions. But there not being any, this Court certainly has the discretion to do so, and it would be completely in line with current precedent regarding unfair competition law. It makes no sense to say that a party can sue a third party to enforce their own trade secret right, because that party was infringing upon their right and taking it without the right to do so, when that same party acquired that interest, themselves engaging in wrongdoing. That's completely inconsistent. I do want to go back, Your Honor, to your question. Thank you. Well, you've, your time has expired. I think I understood what you were going to say. You said you submitted some extra stuff, which we don't have. So it'll be unfair for you to be able to expound about that. I'll just go on. Let's let, let's let your opposition. Would you like me to answer your question? I'm happy to do so. No, I think that we're fine. Let's let the opposition have the chance at argument. Ms. Sun. May it please the Court. Good morning, Your Honors. Jennifer Sun of O'Neill LLP here on behalf of the Plaintiff Appellee Strikepoint Trading, LLC. Just to pick up where I guess you left off with my opposing counsel, I think we might be getting a little bit ahead of ourselves talking about the situation where a trade secret could, may not be enforceable or protectable, because it's procured, it's not a trade secret, it's procured by fraud. Merely because if opposing counsel is correct, that this is purely an issue of law. Quite frankly, I think the record is devoid of any challenges to this particular issue of law in the trial court. This issue was never raised at trial. There were never any jury instructions that were proposed that established this type of law. And there was also never any request, excuse me, from the judge or to the judge that portions of any exhibits that may contain questionable, you know, non-solicitation provisions be redacted or not shown to the jury. So a lot of the issues that I'm seeing in the briefing from the appellant, Ms. Zabalek, again, these are all brand new issues that were never addressed. No objections were made to the trial court. So we're not going to raise any of those issues. Was there an affirmative defense race that goes to the fraud issue? I do not believe so. An unclean hand, for example? I'm sorry? Was there, like, an unclean hand affirmative defense that was raised in the answer? I do not recall right now. It's possible there was a litany of affirmative defenses, but nothing specifically raised at the trial. And I think if we went back through the memorandums of contentious effect in law that were submitted before the trial, I think that – I don't think that there were any specific claims going to that at that point. If, in fact, we were allowed to review this decision as – and we were reviewing the motion as a matter of law, 50B motion, at that point, we would be limited to reviewing the jury verdict for plain error, which would suggest that at least there ought to be any evidence to sustain the verdict. Was there evidence in this trial to sustain this verdict? I said that there was more than sufficient evidence to sustain the verdict. I think, as you'll see in my brief, there is – there is a question whether there could possibly be two different verdicts or two different outcomes based on the evidence. But if there is substantial evidence to support what the jury actually found, then this Court must uphold the jury's verdict, because there's – you know, the jury has a lot of discretion in making the factual findings because they heard the evidence and they read the evidence and they heard the live testimony at trial. Well, I understand generally, but, like, where – what evidence was there about time and funds expended by StrikePoint to obtain and maintain the clients? There was testimony by both the representatives, I believe Mr. Gebhardt and Mr. Armbruster, that they spent – I believe it was millions of dollars per year to maintain the systems, maintain the client relationships, pay the brokers to deal with the clients, to deal with the compliance issues with the CFTC and the NFA, and also just marketing and advertising. These were all responsibilities of StrikePoint throughout the years that they dealt with and they had the joint – I guess it's a venture or a partnership with Optioneer in executing these index option trading. What was the evidence about StrikePoint's policy for maintaining the confidentiality of the list? Well, not only did brokers that were employed by StrikePoint have to sign a confidentiality and nondisclosure agreement, there was also a policies and procedures manual that was claimed that client information and client names were confidential and would be considered trade secrets. And I believe there was a separate – I believe brokers were also – there was evidence in the record that brokers were instructed to maintain the privacy and confidentiality of the records – of the – excuse me, the client list and their information, and not to take any of that information and download it, for instance, onto their personal – personal cell phones or PDAs in case – because I know there were situations that would arise where brokers felt that they might want to contact their clients outside of hours, only because we were based here on the – on the West Coast. And since the markets opened earlier on the East Coast, they may want to try to contact somebody before, you know, the regular – from home, perhaps, and that was definitely not allowed. They were supposed to contact only from the office. The gigantic point raised by your opposition has to do with the fraud. Wasn't there also evidence that StrikePoint and Optioneer notified their clients about Optioneer's fraudulent activity and no client left? Correct. That's – that's very correct, Your Honor. So was – was counsel given the chance to fight the fraud right in the trial, to make the same claim she's making to us right in the trial? Definitely, Your Honor. In fact, I was actually in the trial, and there was a motion in limine filed before the trial. I know it's not in the record, but originally that CFTC order was – there was a motion to exclude it from evidence, and the district court allowed it. So the jury heard evidence on it. In fact, in presenting our – the primary case for StrikePoint, there was testimony both by Optioneer and the representatives of StrikePoint about the CFTC order, and the jury fully heard it, and they saw a copy of the order. Not only did they hear it, but as I understand it, counsel had a chance to talk to the jury about the very question she now wants to talk to us about. Correct. And as I understand it, at the time, the connection with the CFTC order was more of an evidentiary issue or a credibility issue. It was to basically discredit Optioneer and StrikePoint's position at trial, as opposed to now the argument seems to have evolved a little bit, and now the argument is a trade secret cannot be procured by fraud. And now there's supposedly a direct link from the CFTC finding to the clients allegedly being procured by fraud, and that was never an issue at trial. I don't have any other questions. But isn't that kind of an obvious legal question, and that is that one can't maintain a right in a trade secret that one had stolen, that was obtained through fraud? Right. But it was never established that any of the clients that were allegedly procured by fraud were, in fact, procured through the fraudulent marketing materials. In fact, the CFTC order doesn't actually say clients were procured by fraud. It was purely that there were fraudulent marketing materials issued. But, again, after the issue was cleared up and all the clients were notified, there was not a single complaint that was registered with Optioneer or StrikePoint, and none of the clients left until, again, the clients at issue left after Ms. Sibalik left. So would you say that the legal question that the appellant now is framing may not accurately reflect the actual evidence in this case? Yes, Your Honor. Thank you. Anything else? Judge Gould? I have no questions. Thank you. I would just conclude if, you know, StrikePoint is here to ask that the Court affirm both the denial of Ms. Sibalik's motion for non-suit and to affirm the jury's verdict. Thank you. Thank you very much. Frankly, counsel, I think we gave you more time when you stood up the first time, and so we will submit the case. This is case 11-56696, StrikePoint v. Sibalik.
judges: Du, Gould, Smith